25-1006 Citizens for Constitutional Integrity v. United States Mr. Pettinato? Yes, Your Honor. Did I get the right name? Did I pronounce it anywhere close to right? That was very, very, that was excellent pronunciation. Thank you, Your Honor. Yes. Okay. Not common. You may be good. Thank you, Your Honor. May it please the Court. My name is Jared Pettinato, and I represent Citizens for Constitutional Integrity and Southwest Advocates Incorporated. I would like to request two minutes for rebuttal. Citizens seek reversal and remand for the District Court finally to rule on the merits of their SMACRA, Surface Mining Control and Reclamation Act claims. With the benefit of the clarity provided by this Court, citizens amended their complaint to add arbitrary and capricious claims and to refine their citizen suit claims. The District Court erroneously dismissed the arbitrary and capricious claims for failure to exhaust administrative remedies. OSMRE, though, held a secret administrative appeals process, and the District Court never ruled on citizens' citizen suit claims. Once in Southwestern Colorado, the King 2 Mine had seven employees and produced about 7,000 tons of coal. GCC bought it, and now it looms over the Hesperus community. It employs 140 people and produces almost a million tons of coal every year. GCC consumes water from the La Plata River by spraying it on the coal face during mining to suppress coal dust. GCC bought water rights from a nearby farm, but GCC and OSMRE violated OSMRE's regulations. OSMRE does not know how much groundwater the mine is intercepting. It does not know how much surface water the mine is using. And OSMRE cannot protect the health and safety of the public without that information. So the District Court erred by concluding citizens failed to exhaust their administrative remedies. OSMRE held a secret administrative appeals process and thwarted citizens from participating. Five times, citizens requested OSMRE to send them a copy of the permit approval. From the first four times, there had been no approval, right? For the first four times? The first four times. I think only twice, only two or three times, Your Honor. We requested one during the permit approval, and we requested one after. I have those on, I have the timeline right here on page 25 of my brief. So two, no, yes, two requests before the approval, and then three after. One during the administrative appeals process, and then two after.  Thank you, Your Honor. So citizens did not, you know, OSMRE did not give that document to citizens until 11 months after the administrative appeal period closed. So the law does not require exhaustion of unavailable processes. The District Court first misapprehended the order of events. Second, it failed to require OSMRE to prove its affirmative defense. And third, Section 1264 gave citizens a right to bring their case, their claim directly in court. So on the order of events, the District Court found citizens received notice of the permit approval. It's wrong on the timing. DOJ sent the wrong document and sent it too late. It sent the Mineral Leasing Act plan approval, but citizens sought the smacra permit approval. And DOJ sent that three weeks after the appeal period had already closed. OSMRE does not dispute that citizens had no notice in time to participate in the administrative appeal. Second, on the lack of notice, the District Court flipped the burden of proof to require citizens to prove that they did not receive notice in time. But the exhaustion of administrative remedies is an affirmative defense. So OSMRE bore the burden of establishing the administrative process was available, failed to carry its burden, failed to prove it provided notice on time to allow citizens to administratively appeal. And it does not dispute that here. Southwest Advocates in the meantime made comments during the scoping period, during the comment period on the draft environmental assessment to both OSMRE and the Bureau of Land Management. They commissioned expert reports on water and noise impacts they participated in the La Plata County. All in the comments to the environmental assessment, right? Yes. Yes, Your Honor. Yes, Your Honor. They sent, all of this is on that docket number. Yes, sir. And where in the comments to the environmentalists, or where in those comments did citizens or Southwest ever say that the permit for the OSMRE for GCC should be denied? Well, Your Honor, they, I don't know if they, I think they've literally said that I don't have that at my fingertips. They may have. I didn't see it. And I don't remember you addressing that in your, in your briefing, but I may have overlooked it. But, but you're, you're representing that they did in the, in the comments specifically ask for the denial of a permit. I believe so, Your Honor. Yes, I believe they, I can provide particular citations after the argument. And I believe they're at app, to app 171 to 173. That's my recollection. And I can provide, I'll provide Your Honors with citations, but they, they objected. And just to be clear, OSMRE treats comments and objections as the same, since, you know, it could be difficult to differentiate. Yeah, but the whole, what I'm trying to get at, Mr. Bettinato, is the document is not an application for a permit. It's a document that's called an environmental assessment. And the comments were critical of the environmental assessment and arguing that there was a significant, that there needed to be an environment, environmental impact statement, not an environmental assessment. But that is a different regulatory requirement than it is for the grant of a permit to a CCC. Those were, those were two, environmental assessment was different than from the application for a permit. That's what I'm trying to get at. Yes, Your Honor. Those, well, all of those, Congress intended NEPA in particular to be part of the decision-making process for agencies everywhere. That is why it wrote NEPA. And so if you look at the EA itself, if you look at the bottom, it specifically mentions the docket number for the, for this permit. And it says, Dunn Ranch coal lease by application COC 78825. And so that is, the EA is, and the NEPA process are part of that administrative process for determining that approval. I understand that. So, of course, Your Honor, the, because the citizens never received notice of the administrative appeal, and because OSMRE didn't prove that notice, they lose. The party that bears the burden of proof loses if the record is inconclusive on the critical point. So, OSMRE loses on its administrative, its affirmative defense of the failure to exhaust. And that would require the court to reach the merits of these claims. The Smackers text also allows citizens to bring their claim directly in court. Section 1264 gives them a right because OSMRE failed to provide timely notice. And at bottom, due process prohibits OSMRE from holding a secret administrative appeal, giving no notice, and precluding lawsuits when citizens do not participate in the secret appeal. For those reasons, the district court's error requires remand to rule on the merits. The district court also erred by dismissing citizens' citizenship claims. The district court misunderstood its assignment, never interpreted or applied the Smacker provisions on which citizens relied for their citizenship claims. It held that the court was bound by the rulings of the 10th Circuit, and it was referencing Citizens One, written by Your Honor, Judge Hartz, but appellate rulings on motions for preliminary relief do not bind lower courts. And that fundamental error led the district court to hold wrongly that this court, that the 10th Circuit, has specifically rejected the arguments that plaintiffs make. That cannot be true. We amended our complaint after Citizens One came out. We added new provisions from Smack Row, and those are the ones that we briefed and on which we sought relief. So the district court... It's true for two of the three provisions you rely on, 1268 and 1271, I don't recall you amending to add 1211. 1211 was always in the case, right? Yes, that's... And so, you know, so your argument applies to 1268 and 1271, but would you acknowledge that the reliance on Section 1211 can't be considered because that was in the case prior to Judge Hartz's prior panel opinion? Well, Your Honor, I agree that that was in our complaint. Judge Hartz's opinion didn't address 1211. So on the substance of the opinion, it says that, you know, we are addressing these provisions, it didn't address 1211. And, you know, that was in part because we didn't argue it at that point. And we brought it forth in briefing later. But it... But you certainly could have argued it. We could have, Your Honor. And, you know, at some level, regardless of all of that, the Citizens One case is only on the likelihood of success on the merits. So the district court still has to address the claims that we've made. And that is why we're seeking here mainly for remand. We think the district court didn't address the merits of our arbitrary and capricious claims. It didn't address the merits of our citizen suit claims. And this court has held that when it identifies legal error, it remands to the district court to apply the legal standards to the facts of the case in the first instance. And that's consistent with what Congress assigned, and it assigned the district court to make those rulings first. So here we're mainly seeking remand. But even if this court addresses the merits, it would conclude that OSMRE arbitrarily and capriciously approved the permit because it lacked groundwater baseline information and miscalculated the surface water usage. So OSMRE... And you're talking about your 1276 claim, okay?  Before you go back to the 1276 claim from the citizen suit provision, on the citizen suit provision, do you agree that we can only consider your argument for a violation of non-discretionary duties if we consider the notice of intent to sue as a demand that OSMRE OSMRE comply with its unambiguous duties under 1211, 1268, and 1271? Well, Your Honor, we provided the facts. You have to say, agency, I want you to do what you're required to do, non-discretionary duty, right? Well, we did not have to identify the statutes. We identified the basis and the factual substance. And that is enough. And the notice of intent to sue relies only on the stream protection rule, right? The notice of intent to sue, I never see anything even regarding this, certainly never the citation to 1211, 1268, or 1271, nor do I see anything about the substance of it. I do see a lot of discussion about the stream protection rule, which is no longer in the case. So why did you provide adequate notice to trigger the duty to comply with its non-discretionary under these three provisions? Yes, Your Honor, we went beyond the stream protection rule for parts C and D of the 60-day notice. And that's where we talked about, we objected to groundwater notice and diversions of groundwater and groundwater monitoring. And we made specific references to this OSMRE's approval of the diversion of the water. And those are, we didn't mention the statutes in particular. No, no, no. But that's what you're referring to? Yes, yes. And I think 1271A is really, I'd like to reserve a little time for rebuttal, but 1271A presents our best citizen suit claim. And that's because it requires an inspection upon someone giving OSMRE a reason to believe that there is a smacker violation. And our 60-day notice gave OSMRE that reason to believe. That is an objective determination, whether you have a reason to believe. If it's frivolous, of course, that's not enough. But as long as it provides some evidence, that requires an inspection. I'd like to save the rest of my time for rebuttal. Thank you. Thank you. Now we're ready to hear from Mr. Torstensen. Yeah, Mr. Torstensen. Thank you. Torstensen, okay. Good morning. You may have pleased the court, Peter Torstensen for the federal defendants. This court should reject this attempt by appellants or citizens for short to revive its shape-shifting challenge to GCC Energy's permit revision application for the Dunn Ranch expansion. After this court denied citizens' request for preliminary injunction in Citizens 1, finding that the agency had carried out all the duties required by SMACRA, citizens amended its complaint to add claims that it concedes are the same claims based on the same facts. But the statutory provisions citizens relies on now are an even worse fit than they were, than the ones they relied on in Citizens 1. This court should affirm the district court for two reasons. First, citizens failed to exhaust administrative remedies as required to bring claim under section 1276A2. Even if the court excuses citizens' failure, its claims failed because the agency reasonably concluded that GCC's proposed operations will prevent material damage to the hydrologic balance. Second, citizens' pre-suit notice was defective and failed to identify a violation that could compel the agency to bring an enforcement action under SMACRA's citizen suit provisions. Starting with the failure to exhaust. In Citizens 1, this court said that citizens likely did not bring a claim to review the agency's discretionary decisions because it failed to comply with the prerequisites to filing suit under 1276A2. It was right. Citizens does not seriously contest that it failed to request a formal hearing under section 1264C after participating as an objector in the permit review process. Instead, it argues that it is excused from compliance because it didn't receive direct notice and it engaged with the agency in other ways. So are you contending they had actual notice? They, in their, uh, in the notice of intent to sue, which is at, uh, I believe it's at 1 App, uh, 15, uh, or 17 to 22, they indicate that they had received, uh, the mining plan approval document and, uh, within that, the, uh, permit approval decision. So they did at least by January of 2021 have actual notice of the permit decision. Um, but they, but they have, but they have 30. And I think that's consistent with council's timeline in his brief. Um, but they, they have 30 days under, under your rule, but your position is you had no, no duty to provide them notice. And I'm just wondering, I mean, how can they ever exhaust if you don't have a duty to notify them and they didn't. And the record's unclear as to when they have actual notice. So they, they do have a duty to exhaust. Obviously the timeline kicks in for 30 days from the how, how can they, I mean, how can they exhaust within 30 days? If there's no evidence, they had notice of the, of the permit approval. Well, there's evidence that they had actual notice of the permit approval. And as you know, the timeline lays out in the record, it is true that, uh, they received that after the, the, the 30 days would have run. But the answer there is seeking to excuse the delay on the fact that, you know, they did not receive the actual notice until after the 30 day period elapsed. But I don't think the answer is to sidestep that, you know, the effort to pursue administrative remedies entirely. So what's, what's, what's your, what's your authority for that? That when somebody has a duty to exhaust, but they, and they don't receive actual notice within the time to exhaust that they, that they must then seek to file something out of time. Well, I think it's important here to note that the citizens never took steps to participate in the process, either by requesting an informal conference under section 1264 or 63B, um, or commenting on the applications that would have entitled it to direct notice of the permit decision. Um, so because they weren't entitled to direct notice of the permit decision, the fact that they did not receive it within the time doesn't excuse them of their obligation to comply with the statutory timeline. If they had, if, if, if they had commented on the permit application, then you would have had an obligation to notify them promptly within the 30 day period, correct? Correct. Why doesn't the environmental assessment in effect, um, uh, the, the comments in response to the environmental assessment, and if that can constitute comments, uh, uh, proposing denial of GCC's application, because on the very first page, page 101, the environmental assessment says, uh, it analyzes the effect of quote, permit revision to GCCCE's approved mining plan for underground mining and the new proposed federal lease. They do comment. I don't, I don't think that's a dispute, uh, objecting to the environmental assessment. So why, in light of the whole purpose of the environmental assessment on the very first page, why doesn't that constitute a comment that would have required, uh, no prompt notice of the permit? Well, I think the requirements for prompt notice would be tied to their participating in the procedures outlined in section 1263 and 1264. I think whether or not you can constitute, you could treat comments in a separate proceeding, you know, in particular instances, um, would be a question to raise, you know, when they pursued the administrative remedies, um, pursue that process, you know, ask for an informal conference and explain that they qualify, you know, to receive direct notice because, um, they had participated in this related proceeding, um, but one that was succinct. I think that would be fair. Yeah, I, maybe I, yeah, I, I, I'm sorry to talk over you, but, uh, and, and tell me if I, but I just think we may be, I think maybe my question was inartful. I, I'm asking why the comment to the environmental assessment didn't trigger your obligation to notify them. His response is, well, he can't ask for an informal conference or, or file some other objection if you haven't provided any other, uh, any notification that the permit for GCC has been approved. That's, that's really what I'm trying to ask. Well, I would say as to that there, you know, they do receive notice that the permit, uh, revision was under consideration and, um, referred to his, um, or to council's, uh, discussions with the agency in April of 2020, in September of 2020, in November of 2020, um, there are, there's correspondence, and this is at, uh, volume six at 117 through 123. Um, there's correspondence with the agency about the permit revision, uh, application process. And so he was clearly on notice that there was this permit revision process underway, and they could have very easily requested the informal, informal conference under section 1263B. And that would have, again, entitled them to direct notice, uh, didn't need to wait for the actual approval, um, to request that informal conference. Then- Why would they need to ask for an informal conference if the comments regarding the environmental assessment that involved, uh, related, uh, comments for permit approval, why would they need to, that seems like belts and suspenders, why would they need to ask for the, uh, OSMRE's duty to notify them of the permit approval? Well, I don't believe that they, I don't believe that comments in a separate environmental assessment would automatically under the statute trigger the obligation for direct notice. I do agree that you could, you know, the agency could consider whether or not this, all the comments in an alternative procedure were relevant or were, were focused enough in order, I guess, it would excuse their duty for kind of formal compliance under section 1263A. But again, you know, 1263A and 1263B are designed to provide the opportunity to comment on the permit revision application and to get additional information and to initiate, um, you know, the procedure or the administrative process. And it would have provided them with the direct notice they claim that they failed to receive. Um, and then, um, I think just to kind of close the loop on, uh, Council's communications with, uh, agency, the December and January communications do not request any information relating to the permit revision. They request information relating to the mining plan approval document, which is, again, a separate, um, approval, um, that was considered. And so when they received the documents from the DOJ, those were in response to the request for the mining plan approval. And those are the documents that they received, even though at one point in time, they were seeking, uh, information about the permit revision approval. One, one argument made by those in Council was that you're trying to switch the burden of persuasion on the exhaustion issue, that there might be some gaps in the record, but to the extent they're not filled, that's your problem, not his. How do you respond to that? I would say that there are no relevant facts in dispute. Um, this court would need to decide to determine whether or not the administrative process was complied with. Um, I think the question about whether or not, uh, the failure to exhaust can be excused in this particular instance would have been a question that the agency could have addressed that the district court could have considered in the first instance after, uh, the agency had an opportunity to address. And this court would then have a basis for reviewing that. I don't think that the, there's any dispute that they did not proceed or proceed through the administrative procedures outlined in section 1263. So you're, so you're saying that you have satisfied your burden of showing it wasn't exhausted and then it's a citizen's burden to explain why they could not exhaust. Is that the difference between the two of you that, that they're saying you have the burden of showing they could exhaust and you're saying they had the burden of showing why they could not have exhausted? Am I correct about that? I would just maybe take a slightly narrower view on that. I think that they, you know, I don't believe there is a factual dispute as to whether or not they complied with the administrative procedures to exhaust. That I think is, they did not seek, uh, they did not seek a formal conference and so they weren't entitled to direct notice. They did not seek, um, either within the 30-day period or outside of the 30-day period, um, a formal hearing under section 1264C. Um, they simply claimed that they were excused from that because the lack of formal notice, which again we say that they were not entitled to, um, and because they participated in related but distinct proceedings. I don't think those satisfy, I don't think that's a basis for saying that they, um, exhausted administrative remedies. It could be a basis for excusing non-compliance. But, but you are saying that they had the burden on that issue. The burden of whether there's an excuse for failure to exhaust, you're saying is a citizen's burden to establish as opposed to your having a burden to rebut that. Am I correct? Yeah, I think that's right. Maybe that's, maybe we'll hear later, but I, I think that's the nature of citizen's argument on this, but I'm probably missing something. Go ahead. Um, and I'll just briefly turn to the citizen suit, um, argument. Um, so we again think that the notice was defective. Um, citizen suit requires 60-day suit pre-notice. It requires, um, notice of the provision that was allegedly violated, um, and sufficient information to identify the act or omission that constitutes the violation. Um, citizens 2021 notice of intent suit did not claim that they failed to take enforcement action under 1268 or 1271. Instead, they argued that the Dunn Ranch approval violated the stream protection rule, which they themselves described as a fundamentally different regulatory regime. The guiding principle with the notice requirements is that it must give the alleged violator an opportunity to, uh, bring itself into compliance and it must give them information about the specific violation alleged. It may not need to provide precise statutory citations, but at the very least, it needs to give them enough notice to correct, uh, their instance. And we don't believe that the notice here, uh, satisfied that standard. Um, but even if, uh, it did suffice, uh, in citizens one, this board explained that a citizen's supervision operates only where the agency has essentially no choice. It can't be used to compel even partially discretionary decisions. And here, the, the statutory provision that they rely on, section 1271A, requires a reason to believe that a violation exists. And that determination is at least a partially discretionary determination by the agency. And the agency never made that finding here. I see that my time is about to expire, but, um, if there are no more questions, uh, we will rest. Judge Hartz, would you accommodate one question? Oh, I guess so. I guess so. Will you accommodate his getting a chance to answer your question? Of course. Okay. Counsel, uh, let's, let's assume for purposes of argument here that you are correct that the 1211, 1268, or 1271. What, what would your position be? What's left of this case, if that is correct? Uh, if that is correct, I, I believe there's nothing left of the case. I think that, you know, they failed to exhaust the, uh, the ability to pursue their discretionary decision claims. And the only thing that would arguably be left would be non-discretionary claims that citizen supervision provides for, but I don't think that they provided the adequate notice for that. So, uh, this court should affirm. Thank you, counsel. Mr. Pettinato. Thank you, your honor. Just, uh, some brief points. Uh, the, we heard a lot about section 1263. That process was never available here because it, the objection period closed in March, 2018, and that's on page eight of our brief. And we didn't see the environmental assessment until July, 2019. So what counsel is trying to do is create an, uh, an impermeable process that no one can ever challenge. Section 1263 doesn't allow that. Also, uh, the citation, when it says that our, uh, request wasn't sufficient, the regulation by the department of the interior says it would promptly respond to an or informal oral or written request for the date when the applicant received the decision. And that's on page 11 of, I believe it's our reply. So that's sufficient of a request. Thank you, counsel. Thank you, your honor. Counsel, excused. Case is submitted. The court will be in recess until 10 50 AM mountain standard time, 10 minute break. Did you have a question, Judge Becker? Oh, I'm sorry. Sorry. Okay. Thank you. Thanks, Judge. Uh, Mr. Pettinato, I am intrigued by that argument in your reply. My only question is, uh, uh, and I'm not suggesting it is or isn't fatal, but did you present that, uh, did you preserve that argument? I'm sorry, your honor, which argument? The argument in the reply, I think on page 11, that the interior department, uh, committed itself to respond, promptly respond to informal requests that was in your reply. Um, but so I, the, your adversary never got a chance to respond to that. So I'm just asking, it was, was that preserved? Well, we believe we were responding to their argument. We, we think that you raised the issue of notice early and we just identified an additional, uh, authority. Okay. Okay. Thank you. Thanks. Thank you. Uh, so I try again and excuse counsel, uh, case is submitted and we'll still be back at 10 50 AM. Thank you.